**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

JOHN CHARLES HEFLEBOWER,          1:12-cv-01671-AWI-SMS

          Plaintiff,          **ORDER RE: MOTION TO
          DISMISS COMPLAINT**

          v.
          (Doc. 30)

JPMORGAN CHASE BANK, NA, et al.,

          Defendants.
_____/

**I. INTRODUCTION**

Defendant JPMorgan Chase Bank, N.A., has filed a motion to dismiss the complaint of John

Charles Heflebower pursuant to Federal Rule of Civil Procedure 12(b)(6).  For reasons discussed

below, the motion is GRANTED with leave to amend in part, and GRANTED without leave to

amend in part.

**II. FACTS AND PROCEDURAL BACKGROUND**

1

The Court refers the parties to previous orders for a complete chronology of the proceedings.  On October 12, 2012, plaintiff John Charles Heflebower (hereinafter referred to as "Plaintiff") filed his complaint against defendants JPMorgan Chase Bank, N.A., Chase Home Finance LLC, Washington Mutual Bank FA, Title Trust Deed Service Company, and Does 1-20, inclusive, asserting causes of action for declaratory relief, injunctive relief, accounting, quiet title, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, wrongful foreclosure, negligence/negligence per se, unconscionability and violation of the Real Estate Settlement Procedures Act (RESPA, 12 U.S.C. §§ 2601 et seq.).   In the complaint, Plaintiff alleged as follows:

> "The case concerns an obligation of Plaintiff to WASHINGTON MUTUAL.  Said obligation was in the form of a promissory note, (the 'Note'), purportedly purchased by Chase.  [¶] The Note was secured by a deed of trust, (the 'DOT'), that conveyed to WASHINGTON MUTUAL as Beneficiary in interest in Plaintiff's property in Fresno County, California, (the 'Subject Property'), having the legal description stated in Exhibit A."

Plaintiff further alleged:

> "On or about January 13, 2006 Plaintiff executed the Note in which he promised to repay to WASHINGTON MUTUAL the amount of $407,000.00, which sum said Defendant had loaned to Plaintiff.  The Subject Property received an appraisal value much greater than its actual market value.  [¶] On said date, to secure the Note, Plaintiff also executed the DOT, as his sole and separate property, in favor of WASHINGTON MUTUAL.   The DOT identifies Plaintiff as Borrower, WASHINGTON MUTUAL as Lender and Beneficiary, and CALIFORNIA RECONVEYANCE as Trustee.  On January 25, 2006, the DOT was filed of record in the office of the Fresno County Recorder as document number 2006-0015706.  (Exhibit B.)"

Plaintiff further alleged:

> "On or about July 30, 2011 Plaintiff sent CHASE HOME FINANCE, via certified mail, article #7010 3090 0000 0477 8370, sent an express request that CHASE prove its claim to an

2

ownership interest in the Subject Property and to prove CHASE HOME FINANCE's right to collect payments on the Note, (See Exhibit C) . . . . [¶] United States Postal Service, (USPS), records evidence via USPS Form 3811, (Exhibit D), that CHASE HOME FINANCE received Plaintiff's request for information.  The USPS website, (www.usps.com), evidences that Plaintiff's request for information was delivered at 10:19 a.m. on August 11, 2011, (Exhibit E).   To date neither CHASE nor CHASE HOME FINANCE has replied to Plaintiff's express request to support CHASE's claim to own an interest in the Subject Property nor CHASE HOME FINANCE'S right to service the debt."

Plaintiff further alleged:

"On April 13, 2011 The Deputy Comptroller of the Currency for Large Bank Supervision issued a Consent Order re CHASE, ('Consent Order') . . . . [¶] Referring to the Consent Order, on October 17, 2011, Plaintiff sent to the Office of the Comptroller of the Currency an express 'Complaint for Violation of OCC Consent Order,' (Exhibit G), sending a copy thereof to CHASE.  In said complaint Plaintiff informed the OCC that 20 days after receiving his request for information that CHASE substantiate its claim to own an interest in the Subject Property and of CHASE HOME FINANCE'S right to receive payments under the Note . . . , and without responding to same, CHASE had sent him a notice of default, ('NOD'), re the DOT. [¶] To date CHASE has neither acknowledged receipt of said complaint nor provided the required notice of rescission of the NOD that was unlawfully issued on its behalf by TITLE TRUST DEED in January 2012."

Plaintiff further alleged:

"On or about October 18, 2011, Plaintiff sent CHASE HOME FINANCE a Qualified Written Request, (QWR), pursuant to the provisions of [RESPA].  Despite the requirement within Section 6 of RESPA to attempt to resolve the issues raised within a QWR within 60 business days, CHASE HOME FINANCE has neither responded to Plaintiff's QWR nor acknowledged Plaintiff's QWR."

Plaintiff further alleged:

"On or about November 9, 2011, CHASE executed a Declaration of Compliance, (Exhibit I).   Therein, CHASE declared under penalty of perjury that it had: [¶]['']tried with due diligence but was unable to contact the borrower to discuss the borrower's financial

3

situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.['][¶] . . . In fact, Plaintiff attempted three times to contact CHASE and/or CHASE HOME FINANCE in writing in order 'to explore options' for avoiding foreclosure. Each time CHASE and/or CHASE HOME FINANCE failed to respond to Plaintiff's express correspondence.  Two of Plaintiff's attempts were mailed via Certified Mail.  Further, each and every one of Plaintiff's attempts to contact Defendants expressly included Plaintiff's correct and current address.  Had either CHASE or CHASE HOME FINANCE wished to contact Plaintiff, and thereby comply with California Civil Code Section 2923.5, they could have done so with nominal effort."

Plaintiff further alleged:

"On or about January 10, 2012, TITLE TRUST DEED executed a Notice of Default and Election to Sell Under Deed of Trust, ('NOD').  (See Exhibit J).  In said NOD, TITLE TRUST DEED represented it was 'either the original trustee, the duly appointed substitute trustee, or acting as agent for the trustee or beneficiary' under the DOT.' [¶]  TITLE TRUST DEED made no attempt within the NOD or anywhere else to clarify or authenticate which of said three positions it allegedly held or by what authority it was allegedly acting.  Clearly TITLE TRUST DEED was not the original trustee. Four months subsequent to its execution of the NOD, TITLE TRUST DEED was allegedly substituted as trustee for CALIFORNIA RECONVEYANCE by a trustee documents . . . (See Substitution of Trustee, dated May 11, 2012; Exhibit K).  So, at the time TITLE TRUST DEED issued the NOD on January 10, 2012, it was in fact not the actual trustee.  No substitution as trustee had then yet occurred.  The third and only possible claim to TITLE TRUST DEED's alleged authority as expressed in the NOD was that TITLE TRUST DEED was 'acting as agent for the trustee or beneficiary.'  Nowhere in the NOD or any other communication has TITLE TRUST DEED substantiated this express claim to the Plaintiff."

Plaintiff further alleged:

"On or about May 11, 2012 CHASE executed the Substitution of Trustee purporting to appoint TITLE TRUST DEED as Trustee under the DOT in place of CALIFORNIA RECONVEYANCE. Yet, as already shown CHASE had not evidenced to Plaintiff that it possessed the authority to make the appointment. [¶] . . . Plaintiff

4

> had on multiple occasions expressly requested that CHASE evidence its claim to beneficiary status under the DOT, repeatedly demanding that it offer proof of its ownership or authority.  Yet, in the Substitution of Trustee document, CHASE continued to provide no proof of its ownership and/or authority to act as a beneficiary by naming a successor trustee."

Plaintiff further alleged:

> "On or about May 16, 2012, Plaintiff sent to TITLE TRUST DEED and to CHASE, via certified mail, a notarized document entitled, 'Notice of Defective Deed of Trust, Disputed Debt and Invalid Notice of Default.'  (See Exhibit L.) [¶] . . . [¶] To date, Plaintiff has received no response to said notice from either CHASE or TITLE TRUST DEED."

Plaintiff further alleged:

> "On or about June 13, 2012, TITLE TRUST DEED executed and issued a document entitled, 'Notice of Trustee's Sale,' (See Exhibit M), that states: [¶]['On 07-09-2012 at 10:30 A.M., TITLE TRUST DEED SERVICE COMPANY, as duly appointed Trustee under and pursuant to [DOT] [¶] WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER [¶] . . . All right, title, and interest conveyed to and now held by it under [DOT] in the property situated in said County, and State described as: APN No.: 510-110-36.['] [¶] As is evidenced in the Grant Deed concerning the Subject Property, (See Exhibit N), the actual Assessor's Parcel Number, ('APN'), is different than the APN expressed within the Notice of Trustee Sale, (Exhibit M), above.  In fact, the correct APN is 311-100-36, whereas the APN listed in the Notice of Trustee Sale is 510-110-36.  Accordingly, it cannot be disputed that the APN as set forth in the Notice of Trustee's Sale was incorrect."

Plaintiff further alleged:

> "The erroneous APN is fatal to the validity of the Notice of Trustee Sale.  Yet as stated herein, another fatal error was made by TITLE TRUST DEED regarding the Notice of Trustee Sale.  Factually, TITLE TRUST DEED possessed no authority to perform any act as Trustee under the DOT.  It was not a 'duly appointed' trustee as expressed in the Notice of Trustee Sale, (See Exhibit M).  Since TITLE TRUST DEED lacked appointment by a genuine beneficiary, every act it has taken re the Subject Property has been without authority."

5

Plaintiff further alleged:

> "CHASE has refused to evidence to Plaintiff any right to any interest, ownership or claim to the Subject Property despite Plaintiff's repeated express requests. [¶] Moreover, as evidenced in the recent sworn testimony of Lawrence Nardi, an operations unit manager and mortgage officer for CHASE, and previously a WASHINGTON MUTUAL employee, CHASE has no specific record of having acquired a single negotiable instrument as a result of its acquiring WASHINGTON MUTUAL's assets when the latter entity failed and was seized by the OTS [Office of Thrift Supervision] due to gross mismanagement. [¶] Without such specific records, CHASE has no possibility of establishing or proving a valid claim to the Subject Property, and the NOD, Substitution of Trustee, Declaration of Compliance, and Notice of Trustee Sale are all unlawful attempts to dispossess Plaintiff of the Subject Property."

Plaintiff further alleged:

> "[D]espite CHASE's assertions to the contrary in its Declaration of Compliance, CHASE and TITLE TRUST DEED initiated this foreclosure proceeding without first properly notifying Plaintiff as was their duty under California Civil Code § 2923.5. Said code section prohibits a mortgagee, beneficiary, or authorized agent from filing a NOD until thirty (30) days after contacting a borrower who has fallen into default to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure."

Plaintiff further alleged:

> "TITLE TRUST DEED also failed to record the NOD as required, by the provisions of California Civil Code § 2923.5(a)(1) and (2) for published and posting. TITLE TRUST DEED failed to notify Plaintiff in person or by telephone in order to assess Plaintiff's financial position and explore options that would avoid foreclosure. [¶] In addition, TITLE TRUST DEED failed to advise Plaintiff that he had a right to request a subsequent meeting. For this reason, no meeting occurred within the required 14-day period. [¶] Furthermore, TITLE TRUST DEED did not provide Plaintiff with the telephone number to the United States Department of Housing and Urban Development, (HUD), to identify a HUD-certified housing counseling agency as required by California Civil Code § 2923.5. [¶] TITLE TRUST DEED's failures to abide by

> any of the due diligence requirements of California Civil Code § 2923.5(a)(1), (2), (b), and (g)(1) and (2)(A), (B), and (C) denied Plaintiff the opportunity to explore alternatives to avoid foreclosure."

Plaintiff further alleged:

> "Plaintiff declares that he was not contacted and need not tender the full indebtedness. [¶] Furthermore, CHASE has failed to state substantively how it complied with the due diligence requirements of said code section. CHASE's Declaration of Compliance, (See Exhibit I), provides no details and sets forth no particulars of any attempt to contact Plaintiff that it allegedly made prior to initiating foreclosure proceedings. [¶] Also, CHASE's Declaration of Compliance contains no statement either that CHASE had personal knowledge of the statements it alleged or how or where it obtained its information. In fact, it is a boilerplate form with boxes to be checked by each CHASE declarant who uses it."

Plaintiff further alleged:

> "The NOD does not include a statement of the required agent's personal knowledge of facts and whether or not the Plaintiff was affirmatively contacted in person or by telephone to assess the Plaintiff's financial situation and explore options for the Plaintiff to avoid foreclosure. Simply put, important and required elements of the declaration are missing. [¶] By failing to comply with California Civil Code § 2923.5 prior to filing the NOD, Defendants also violated California Civil Code § 2924, e.g., §§ 2924(b), and thus greatly prejudices the Plaintiff's options to cure any alleged default in his mortgage, e.g., by disencumbering and/or refinancing the Subject Property."

On February 26, 2013, defendant JPMorgan Chase Bank, N.A., for itself and as successor by merger to Chase Home Finance, LLC (hereinafter referred to as "Defendant"), filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On March 18, 2013, Plaintiff filed his opposition to Defendant's motion to dismiss. Defendant filed its reply to Plaintiff's opposition on April 8, 2013.

1

2                          **III. LEGAL STANDARD**

3

4      A complaint must contain "a short and plain statement of the claim showing that the pleader is

5      entitled to relief." Fed.R.Civ.P. 8(a)(2).  Where the plaintiff fails to allege "enough facts to state

6      a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege

7      facts sufficient to state a claim upon which relief may be granted.  *Bell Atlantic Corp. v.*

8      *Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); see Fed.R.Civ.P.

9      12(b)(6).  "A claim has facial plausibility," and thus survives a motion to dismiss, "when the

10     pleaded factual content allows the court to draw the reasonable inference that the defendant is

11     liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 173

12     L.Ed.2d 868 (2009).  On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts

13     alleged in the complaint as true and construes them in the light most favorable to the plaintiff.

14     *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005).  However, the court need not accept

15     conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters

16     properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences.

17     *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).   If a Rule 12(b)(6)

18     motion to dismiss is granted, "[the] district court should grant leave to amend even if no request

19     to amend the pleading was made, unless it determines that the pleading could not possibly be

20     cured by the allegation of other facts." *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995).

21     In other words, "dismissal . . . without leave to amend is not appropriate unless it is clear . . . the

22     complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d

23     1048, 1052 (9th Cir. 2003).

24

25

26                                          8

# IV. DISCUSSION

The court will first address Plaintiff's substantive causes of action (Numbers 3-5, 7-11) followed by his request for equitable relief (Numbers 1-2).  Plaintiff's sixth cause of action for breach of fiduciary duty is not alleged against Defendant Chase and was not addressed in Defendant's motion to dismiss.

***A.   Plaintiff's cause of action for unjust enrichment -*** Plaintiff alleges a cause of action for unjust enrichment based upon the theory that because Defendant did not possess an ownership interest in the Note, Chase was not entitled to receive and retain his mortgage payments, and, thus, was unjustly enriched by doing so.  The elements of an unjust enrichment claim are receipt of a benefit and unjust retention of the benefit at the expense of another.   *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593 (2008); *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000).   Unjust enrichment is typically sought in connection with a "quasi-contractual" claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract.  *McBride v. Boughton,* 123 Cal.App.4th 379, 388 (2004).   Under California law, an action in quasi-contract does not lie "when an enforceable, binding agreement exists defining the rights of the parties."   *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *Hedging Concepts, Inc. v. First Alliance Mortgage Co.,* 41 Cal.App.4th 1410, 1419-20 (1996).  The complaint states Plaintiff entered into a contractual agreement with WaMu, Chase's predecessor-in-interest.  Plaintiff makes no allegations to support a claim that no contract exists between the parties, requisite to a claim for unjust enrichment.

Further, many courts have recognized that pursuant to the Purchase and Assumption Agreement ("P and A Agreement") dated September 25, 2008, the FDIC transferred to Chase "all right, title, and interest of the Receiver in and to all of the assets" of WaMu.  *Lopez v. Washington Mut. Bank, F.A.*, 2010 WL 1558938 at *4 (E.D. Cal. Apr. 19, 2010); *Jones v. JP Morgan Chase Bank, N.A.*, 2012 WL 4815468 at *1 (N.D. Cal. Oct. 9, 2012); *Lomely v. JP Morgan Chase Bank, N .A.,* 2012 WL 4123403 at *1 (N.D. Cal. Sept. 17, 2012).  In other words, Chase purchased WaMu's loans, including the right to collect payments against the loans, and the right to foreclose on them for failure of borrower to tender payments.  *Jones*, at *1.  See *Eng v. Dimon,* 2012 WL 3659600 at *1 (N.D. Cal. August 24, 2012).

Plaintiff admits he contracted to borrow funds from WaMu.  This loan was subsequently sold to Chase under the P and A Agreement.  As such, Chase was legally and justly entitled to collect and retain loan repayments from Plaintiff.  Because Plaintiff has not alleged facts sufficient to maintain a plausible claim for unjust enrichment, Defendant's motion to dismiss this cause of action is GRANTED without leave to amend.

***B. Plaintiff's cause of action for accounting -*** Plaintiff further alleges a cause of action for an accounting to determine the "exact amounts, including interest, owed to Plaintiff by Defendants."  Defendant contends that a claim for accounting is not an independent cause of action, but a remedy, and should be dismissed.  Defendant further contends that Plaintiff's accounting claim should fail because there is no "fiduciary relationship between a lender, mortgage servicers, beneficiaries under a deed of trust, and foreclosure trustees, and borrowers."

A claim for accounting requires a showing that "a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can

only be ascertained by an accounting." *Tamburri v. Suntrust Mortgage, Inc,* 2011 WL 6294472, at *17 (N.D. Cal. Dec. 15, 2011).  The purpose of an accounting is "to discover what, if any, sums are owed to the plaintiff" and "an accounting may be used as a discovery device." *Teselle v. McLouglin*, 173 Cal.App.4th 156, 179, 92 Cal.Rptr.3d 696 (2009).  A fiduciary relationship between the parties is not required to state a cause of action for accounting.  *Teselle,* at 179.

The crux of Plaintiff's complaint is that Chase has no legal standing to participate in the servicing of his mortgage because they were not legally assigned the rights of WaMu.  This undermines his argument for an accounting because he contends that no relationship exists between himself and Defendant, the first requisite element of the cause of action.  However, as discussed in the analysis of Plaintiff's unjust enrichment claim above, this court recognizes Chase as the real party of interest in the Subject Property, which presumes a relationship between Plaintiff and Chase requisite to an accounting.  Problematically, while an accounting may be used as a discovery tool to determine what, if any, money is owed to Plaintiff, the only money Plaintiff claims is owed him is the reimbursement of payments made to Chase against his mortgage obligation.  Plaintiff bases this argument on the theory that Chase was not the lawful owner or servicer of his mortgage, and, thus, unlawfully collected his loan payments.  Given Chase was entitled to collect on the loan under the P & A Agreement with WaMu, Plaintiff's argument is without merit.

Plaintiff has not shown facts that support an amount due from the defendant that can only be determined through an accounting. As such, the motion to dismiss the accounting claim is GRANTED without leave to amend.

11

***C. Plaintiff's cause of action for quiet title -*** Plaintiff further alleges a cause of action to quiet title to the Subject Property against all claims of Defendant, alleging that Defendant "… [has] no right to title or interest in the Subject Property and no right to entertain any rights of ownership…"  Defendant states that Plaintiff's claim to quiet title must fail because he has not: (1) tendered the amount due, nor (2) established an adverse claim held by Defendants as evidenced by the fact that title remains in Plaintiff's name.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney,* 219 Cal. 637, 649, 28 P.2d 673 (1934); *Aguilar v. Bocci,* 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974); *Mix v. Sodd,* 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) (holding that trustor is unable to quiet title "without discharging his debt").  "[T]o maintain a quiet title claim, a plaintiff is required to allege tender of the proceeds of the loan at the pleading stage… [or] plead an ability to tender." *Briosos v. Wells Fargo Bank,* 737 F.Supp.2d 1018, 1032 (N.D. Cal. 2010).  "The cloud upon [a claimant's] title persists until the debt is paid."  *Aguilar*, at 478; *Coyotzi v. Countrywide Fin. Corp.*, 2009 U.S. Dist. LEXIS 91084, *54 (E.D. Cal. Sept. 15, 2009); *Pagtalunan v. Reunion Mortg.*, Inc., 2009 U.S. Dist. LEXIS 34811, *14 (N.D. Cal. April 8, 2009).

While Plaintiff states in his complaint that he is the owner of the subject property, and is entitled to possession of it, he does not allege that he has satisfied his payment obligation under the Deed of Trust.  There are no facts that indicate Plaintiff has either alleged tender nor plead an ability to tender.

Accordingly, Defendant's motion to dismiss the Quiet Title claim is GRANTED with leave to amend.

***D.  Plaintiff's cause of action for breach of implied covenant of good faith and fair dealing -*** Plaintiff further alleges a cause of action for breach of implied covenant of good faith and fair dealing, claiming Defendant's conduct "harmed [him]… in that he has been forced to expend substantial resources of time and money… in defending his right of ownership in the Subject Property."   Plaintiff also alleges he was presented "unconscionable adhesion contracts" by WaMu in the form of the Deed of Trust and Note.  Defendant contends there can be no claim for breach of the covenant unless the parties are in a special relationship with fiduciary characteristics.

In *Reinhardt v. Gemini Motor Transport*, this court observed that in California there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. *Reinhardt v. Gemini Motor Transp.*, 879 F.Supp.2d 1138, 1145 (E.D. Cal. 2012).  However, the duty of good faith and fair dealing is "a *supplement* to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement."  (Emphasis added).  *Lopez* 2010 WL 1558938 at *9, quoting *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 799, 71 Cal.Rptr.3d 885 (2008).   Therefore, to the extent that Plaintiff's allegation concerns the formation and origination of the loan agreement with WaMu, a cause of action for a breach of the covenant must fail.  See Lopez, supra, at *9.

As to performance of the agreement, the allegations are similarly defective.   The elements necessary to establish a breach of the covenant of good faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff

was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.,* 732 F.Supp.2d 952, 968 (N.D. Cal. 2010); Judicial Council of California, Civil Jury Instructions ("CACI") § 325.  Plaintiff appears to suggest Defendant unfairly interfered with Plaintiff's right to receive benefits under his loan agreement because Defendant did not possess the promissory note, and was therefore not permitted to receive and retain, and to presumably apply or not apply, his loan payments to the balance of his loan.  The court has already rejected this theory. Plaintiff further appears to suggest Defendant unfairly interfered because it was not permitted to initiate foreclosure proceedings without possession of the note.  As the court shall explain in the next section of the order below, this theory is similarly without merit.

In addition, "no cause of action for the tortuous breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'"  *Rosenfeld,* at 969*,* quoting *Pension Trust Fund v. Federal Ins. Co.,* 307 F.3d 944, 955 (9th Cir. 2002).  "California courts do not invoke a special relationship between a lender and borrower absent special circumstances with such "fiduciary characteristics."  *Oaks Mgmt. Corp. v. Superior Court,* 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006).   Plaintiff alleges no facts in his complaint establishing a "special relationship" between himself and Defendant that justify extending tort liability.

Plaintiff has not stated a claim for breach of the implied covenant of good faith and fair dealing, therefore, Defendant's motion to dismiss is GRANTED without leave to amend.

*E.  Plaintiff's cause of action for wrongful foreclosure* - Plaintiff further alleges a cause of action for wrongful foreclosure, making several separate allegations.

14

First, Plaintiff alleges that Defendant initiated foreclosure proceedings improperly by doing so without proving possession of the promissory note.  Plaintiff relies on *Carpenter v. Longan*, 83 U.S. 271, 21 L.Ed. 313, 16Wall. 271 (1872), for authority, quoting, "The note and mortgage are inseparable; the former as essential, the latter as an incident.  An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

Plaintiff's contention that only the possessor of the original wet-ink signature note may lawfully initiate a non-judicial foreclosure is incorrect.  California is a non-judicial foreclosure state and requires neither possession nor production of the original note in order to initiate non-judicial foreclosure proceedings under a deed of trust.  *Davenport v. Litton Loan Servicing, LP*., 725 F.Supp.2d 862, 880 (N.D. Cal. 2010); *Shuster v. BAC Home Loans Servicing, LP.*, 149 Cal. Rptr. 3d 749, 754, 211 Cal.App.4th 505, (2012).  "Under California law, there is no requirement that a trustee produce the original promissory note prior to a non-judicial foreclosure sale." *Wooten v. BAC Home Loans Servicing, LLP*, 2011 WL 500067 at *7 (N.D. Cal. Feb. 8, 2011). It is well settled law that the original promissory note and deed of trust need not travel together through their existence in order to be enforceable.

*Carpenter v. Longan* does not support Plaintiff's argument.  *Carpenter* is distinguishable because the central issue in there was not a home mortgage in default, but rather a loan relating to a financial loss concerning wheat and flour.  Furthermore, even if Carpenter were on point here, *Reardean v. Citimortgage, Inc.,* 2011 WL 3268307, at *4 (W.D.Tex. July 25, 2011) aptly addresses the obsolete and antiquated holding, stating *"Carpenter* was written almost 120 years ago and has no relevance regarding whether, in this modern day and age, sending a deed of trust to an electronic title-holding company for storage and transfer renders a mortgage invalid and unenforceable."  Plaintiff provides no further statute or authority that requires a mortgagee or

mortgage servicer to produce the original note, and as such, his argument is without merit.  The attempt to foreclose on Plaintiff's loan was not improper simply because Chase was not the holder of the original note.  Plaintiff's argument for wrongful foreclosure on this basis lacks merit.

Second, Plaintiff alleges Defendant failed to comply with state non-judicial foreclosure requirements, specifically Cal. Civ. Code section 2923.5 which provides in pertinent part that "[a] mortgage servicer, mortgagee, trustee, beneficiary or authorized agent may not record a notice of default pursuant to Section 2924 until … 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e)."  Cal. Civ. Code section 2923.5(a)(1).  Under paragraph (2), "[a] mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code section 2923.5(a)(2).  Under subdivision (e), "[a] notice of default may be recorded… when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact borrower occurred despite the due diligence of the mortgage servicer."  Cal. Civ. Code section 2923.5(e).

Courts in the Eastern District have examined the issue of wrongful foreclosure claims based upon violations of section 2923.5 and have found tender is required for these claims.  "When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."  *Keen v. Am. Home Mortgage Servicing, Inc.*,  664 F.Supp.2d 1086, 1100 (E.D. Cal. 2009), quoting *Alicea v. GE Money Bank,* 2009 WL 2136969, 2009 U.S. Dist. LEXIS 60813 (N.D. Cal. July 16, 2009).  The *Keen* Court further noted that the

overwhelming majority of California district courts require tender when examining wrongful foreclosure claims.  Plaintiff has not alleged any facts that he has made tender against his mortgage loan, that demonstrate his willingness to make tender, or that support his ability to make tender.  Plaintiff's claim for wrongful foreclosure under section 2923.5 cannot proceed.

Third, Plaintiff alleges further violation of state non-judicial foreclosure requirements contending that the Notice of Default recorded by Title Trust Deed Service Company (TTDSC) was invalid.  Plaintiff alleges it was improper for TTDSC to file a NOD prior to being substituted as trustee by Chase.

Cal. Civ. Code section 2934a(b) provides:

> If the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries shall cause a copy of the substitution to be mailed, prior to the recording thereof, in the manner provided in Section 2924(b), to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of section 2924(b).  An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision.  Cal. Civ. Code section 2934(a)(b).

Upon request by Defendant, the court takes judicial notice of the recorded documents pertaining to the Subject Property at issue in this complaint, and recognizes the following facts:  On January 12, 2012, a Notice of Default and Election to Sell Under the Deed of Trust was recorded with the Fresno County Recorder's Office as instrument number 2012-0004197.   On June 18, 2012, a Substitution of Trustee was recorded with the Fresno County Recorder's Office as instrument number 2012-0084333-00.   On June 18, 2012, a Notice of Trustee's Sale was recorded with the Fresno County Recorder's Office as instrument number 2012-0084334-00.

The chronology of events is proper under section 2934(a)(b).  The court takes judicial notice of the Affidavit of Mailing of the Substitution, and finds the requirements of section

2934(a)(b) fulfilled.  Plaintiff's allegation that the NOD was invalid based upon an improper

filing of the Notice of Substitution does not support his claim that Defendant failed to comply

with foreclosure requirements.

Fourth, Plaintiff alleges further violation by Defendants of state non-judicial foreclosure

requirements under Cal. Civ. Code section 2932.5 by failing to record an Assignment of Deed of

Trust from WaMu to Chase upon acquisition of its assets.  Plaintiff argues that because the chain

of ownership was unrecorded, the power of the sale in the deed of trust is no longer valid under

section 2932.5.  Defendant correctly argues that there is no requirement under California law for

the foreclosing entity to have recorded the assignment of the Deed of Trust.  Section 2932.5

states "the power of sale may be exercised by the assignee if the assignment is duly

acknowledged and recorded."  However, in *In re Salazar,* the court interpreted Section 2932.5,

holding unequivocally that the statute "does not apply to deeds of trust."  *In re Salazar*, 470 B.R.

557, 560 (S.D. Cal. 2012).

The court in *Roque v. Suntrust Mort., Inc.* further clarified:  "[Section 2932.5] applies

only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a

power of sale to the trustee."  *Roque v. Suntrust Mortg., Inc.* 2010 WL 546896 at *3 (N.D. Cal.

Feb. 10, 2010).  Thus, Section 2932.5 does not serve as a basis to challenge the actions by

Defendant based on a failure to record.  Defendant's motion to dismiss the claim is GRANTED

without leave to amend.

**F.  *Plaintiff's cause of action for negligence and negligence per se -*** Plaintiff further alleges

causes of action for negligence and negligence per se, claiming Defendant was negligent in the

servicing of Plaintiff's loan by failing to "maintain proper and accurate loan records and… other

incidents attendant to the maintenance, accounting and servicing of loan records."  Defendant argues the negligence claim should be dismissed because Plaintiff has failed to sufficiently establish a legal duty owed to him required to maintain his claim.

Under California law, the elements of a cause of action for negligence are "(1) a legal duty to use reasonable care, (2) breach of the duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles,* 66 Cal.App.4th 1333, 1339, 78 Cal. Rptr. 2d 525 (1998).  Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Tamburri v. Suntrust Mortgage, Inc*., 2011 WL 6294472 (N.D. Cal. 2011), quoting *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991).  "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financial enterprise 'beyond the domain of the usual money lender.'" *Nymark,* at 1096.  Because Plaintiff has not offered any facts that allege Chase's involvement in the loan exceeded the scope of its conventional role as lender/loan servicer or beyond the domain of the usual money lender, he has not sufficiently stated a claim upon which relief may be granted.  Plaintiff's cause of action fails at the first requisite element of duty.

Plaintiff further alleges an action for negligence per se because Defendant's actions have been in "direct violation of federal and state statutes, rules and regulations."  Defendant argues this claim should be dismissed for failure to identify what particular state and federal statutes Chase violated.

19

Negligence per se is a tort theory whereby courts use statutes or regulations to define the standard of reasonably prudent conduct. *Hackett v. G.D. Searle & Co.*, 246 F.Supp.2d 591, 594 (W.D. Texas. 2002). The doctrine of negligence per se is based on violation of a statute or regulation, and is codified in California Evidence Code section 669. The section provides, in pertinent part, "(a) The failure of a person to exercise due care is presumed if: (1) [A person] violated a ... regulation of a public entity, (2) The violation proximately caused ... injury ..., (3) The ... injury resulted from an occurrence of the nature which the ... regulation was designed to prevent, and (4) The person suffering the ... injury ... was one of the class of persons for whose protection the ... regulation was adopted." (Cal. Evid.Code, § 669.) *Lua v. Southern Pacific Transportation Co.,* 6 Cal.App.4th 1897, 1901, 9 Cal.Rptr.2d 116, (1992). Negligence per se delineates a specific manner, based upon statute or regulation, in which a *breach* of duty may be identified. However, a breach is irrelevant if no duty has first been established. Consequently, because Plaintiff has not established a cognizable legal duty owed to him by Defendant, Plaintiff's negligence per se claim fails.

Defendant's motion to dismiss the claims for negligence and negligence per se is GRANTED without leave to amend.

***G. Plaintiff's cause of action for unconscionability -*** Plaintiff further alleges a cause of action for unconscionability upon the theory that his mortgage agreement is unconscionable as written, and seeks the court to declare the contract unenforceable. Plaintiff cites the definition of an unconscionable contract within Black's Law Dictionary as the controlling legal standard: One which no sensible man not under delusion, duress, or in distress would make, and such as no

honest and fair man would accept;  a contract the terms of which are excessively unreasonable, overreaching and one-sided.   Plaintiff incorrectly relies on this definition for the legal basis of his cause of action.  Case law has developed the doctrine of unconscionability and includes both a '"procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results." *Walnut Producers of California v. Diamond Foods Inc.*, 187 Cal.App.4th 634, 645, 114 Cal.Rptr.3d 449, (2010).  Procedural unconscionability generally takes the form of an adhesion contract which, "imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Discover Bank v. Superior Court,* 36 Cal.4th 148, 160, 30 Cal.Rptr.3d 76, (2005).   The procedural element concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. *Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571, 581, 61 Cal.Rptr.3d 344, (2007). Both elements, procedural and substantive, must be met before a contract or term will be deemed unconscionable. Identical showings of both elements need not exist.  Rather, a sliding scale is applied so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000).

Plaintiff does not dispute that he willfully entered into a mortgage contract with WaMu in 2006.   He questions neither the manner in which the contract was negotiated, nor the circumstances of the parties at the time.   Plaintiff, instead, bases his argument for unconscionability upon Chase's conduct at the time Chase purchased the outstanding loans from WaMu; specifically, that Chase "knew that WaMu was going to fail" and purchasing the loans

with this knowledge rendered the loans newly unconscionable. Plaintiff defines Chase's efforts to collect his contractually fixed loan payments as "monthly extortion." He described these attempts as "an offer he could not refuse" explaining that if he refused to tender his agreed upon loan payment, he would not be allowed to continue to possess the subject property. What Plaintiff has described is precisely the nature of a lender's rights under foreclosure law. Plaintiff has drawn an incorrect analogy between a contract of adhesion and his own financial obligation to his lender.

An absence of procedural unconscionability, as here, requires a significant finding of substantive unconscionability. Finding allegations to establish neither, the court concludes Plaintiff has failed to establish a claim for relief on ground of unconscionability. Defendant's motion to dismiss is GRANTED without leave to amend.

***H.  Plaintiff's cause of action for violation of the Real Estate Settlement Practices Act (RESPA) -*** Plaintiff further alleges a cause of action for violation of RESPA. Specifically, he cites 12 U.S.C. section 2607, titled Prohibition Against Kickbacks and Unearned Fees. Plaintiff does not cite which provision of Section 2607 he believes was violated, but states only "…in connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed." Plaintiff does not support this claim by describing the allegations or clarifying what the services performed were, if not for services actually performed. Further, none of the statutory language set forth in section 2607 is linked to any facts in the complaint. It is further unclear when the violation of section 2607 against Plaintiff occurred. Section 2614 limits any action pursuant to the provisions of section 2607 to one year from the date of the occurrence of the violation. 12

U.S.C.A. § 2614.  The only date Plaintiff references in his claim for Violation of RESPA is June 30, 2010, and absent any other determinative clarification of time, the claim here is time barred.

It appears Plaintiff may have intended to allege a violation of 12 U.S.C. section 2605 for "refusing to truthfully respond to Plaintiff's QWR."  Defendant argues Chase "had no duty to respond to Plaintiff's purported QWR because it did not relate to servicing of the loan."  Section 2605(e) is titled "Duty of loan servicer to respond to borrower enquiries," and under this section, the term 'servicer' means the person responsible for servicing of a loan.  "Servicer" includes the person who makes or holds a loan if such a person also services the loan.   Section 2605(e) provides in pertinent part as follows.

1. Notice of receipt of inquiry
   A. In general.  If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days… unless the action requested is taken within such period.
   B. Qualified written request.  For purposes of this subsection, a qualified written request shall be a written correspondence, other than the notice on a payment coupon or other payment medium supplied by the servicer, that –
      ii.   Includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
2. Action with respect to inquiry.  Not later than 30 days… after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
   C. after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
      i.  Information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer, and
      ii. the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Defendant argues that Plaintiff's claim should be dismissed for two reasons. First, Defendant argues that Plaintiff's purported QWR, attached as Exhibit H to the complaint, is not a QWR because "*many* of Plaintiff's demands do not refer or relate to the servicing of the loan" (emphasis added) as required under section 2605. However, Defendant does not acknowledge why it did not respond to Plaintiff's inquiries that do relate to the servicing of the loan. Second, Defendant argues the complaint does not explain "how [Plaintiff's] account is in error." While Plaintiff may not have specifically stated the reasons he believed the account was in error, Defendant provides no argument as to why it believes that the QWR failed to "provide sufficient detail to the servicer regarding *other information sought by the borrower*." (Emphasis added.) Additionally, it is unclear to the court whether Chase has yet to provide any correspondence acknowledging receipt of or response to Plaintiff's QWR. Because of the broad language in the statute allowing a borrower to inquire describing the "information sought" if it is "relating to the service of the loan," Plaintiff's letter is deemed to be a QWR for the purposes of withstanding an attack under Rule 12(b)(6).

Nevertheless, Plaintiff has not shown he has suffered any kind of pecuniary loss resulting from Defendant's failure to respond to him. Section 2605(f)(1)(A) allows for "actual damages to the borrower as a result of the failure" to comply "with any provision of this section… for each such failure." The complaint is insufficient to allege the pecuniary harm required by the statute. There is no language within RESPA that allows a borrower to recover actual damages for non-pecuniary losses. See *Allen v. United Financial Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D. Cal. 2009) (dismissing RESPA claim with prejudice where plaintiff alleged only harm as a result of foreclosure and did not directly "show that the alleged RESPA violations caused any kind of pecuniary loss"); *Lal v. American Home Servicing, Inc.,* 680 F.Supp.2d 1218, 1223 (E.D. Cal.

2010) (finding a borrower may not recover damages for non-pecuniary loss under RESPA.) Therefore, Defendant's motion to dismiss the RESPA claim is GRANTED without leave to amend.

***I. Plaintiff's causes of action for declaratory and injunctive relief –*** Lastly, Plaintiff asserts causes of action for declaratory and injunctive relief, and seeks judicial determination that (1) "Chase possesses no ownership interest in the Subject Property," and (2) that "Defendants failed to comply with the statutory requirements for the issuance and recording of the Notice of Default."

Plaintiff's requests for declaratory and injunctive relief are predicated on the viability of his substantive causes of action. Because Plaintiff's substantive causes of action are not meritorious, Defendant's motion to dismiss the claims for declaratory and injunctive relief is GRANTED without leave to amend.

## V. DISPOSITION

For reasons discussed above, the motion shall be GRANTED with leave to amend in part, and GRANTED without leave to amend in part.

IT IS SO ORDERED.

Dated:   September 27, 2013   _____

SENIOR  DISTRICT  JUDGE

25